**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Lt. Leroy Hilde,

                     Plaintiff,        Civ. No. 12-2794 (RHK/LIB)
                                             **MEMORANDUM OPINION
                                             AND ORDER**

v.

The City of Eveleth,

                     Defendant.

---

Andrew P. Muller, Muller & Muller, PLLC, Minneapolis, Minnesota, John A. Klassen, John A. Klassen, PA, Minneapolis, Minnesota, for Plaintiff.

Patricia Y. Beety, Jana M. O'Leary Sullivan, League of Minnesota Cities, St. Paul, Minnesota, for Defendant.

---

# INTRODUCTION

Plaintiff Leroy Hilde has worked for Defendant, the City of Eveleth, Minnesota (the "City"), as a police officer for the past 29 years, serving as Lieutenant, the City's second-highest-ranking officer, since 1998. In January 2012, the City's Chief of Police, Brian Lillis, announced his intention to retire. Hilde was among five applicants for Lillis's position but was not selected. He then commenced this action, alleging he was passed over for the position on account of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* Presently before the Court is the

City's Motion for Summary Judgment. For the reasons that follow, the Motion will be granted.

## BACKGROUND

When viewed in the light most favorable to Hilde, the record reveals the following facts. The Court notes that most of the pertinent facts are undisputed.

### I. The department and Hilde's background

The City has a small police force, comprising approximately a dozen officers including a Chief of Police, a Lieutenant, two or three Sergeants, and several patrol officers. The Lieutenant is second in command, generally charged with overseeing the department's day-to-day operations. In addition, the Lieutenant serves as acting Chief whenever the Chief of Police is absent for vacation or other reasons.

Hilde was born in 1960. The City hired him as a patrol officer in 1983, a year after he earned an Associate's degree in law enforcement; Lillis also was hired as a patrol officer around this time. Lillis was later promoted to Lieutenant (in 1987), and Hilde was promoted to Sergeant in 1990.

In 1998, the City's then-Chief of Police, James Bozicevich, retired. Hilde and Lillis applied for the position, although Hilde told Lillis he didn't really want the job at that point in his career – he applied only to keep it "an internal process."[1] Lillis

---

[1] According to Lillis, Hilde was concerned that the Police Commission – the body charged with making hiring and promotion recommendations to the City Council, which made the final employment decision – might seek applications from outside the department if only one internal candidate sought the job.

eventually was selected, creating a vacancy at the Lieutenant level; Hilde was then promoted to Lieutenant.

Over the next 14 years, Hilde performed well in this position. His day-to-day duties included, among other things, preparing shift schedules, representing the Chief of Police at professional seminars and conferences, conducting training for lower-ranking officers, and as noted above, assuming the role of acting Chief when Lillis was absent. According to Lillis, Hilde's position as the second-highest-ranking officer afforded him unique insight into the functioning of the police department and equipped him with skills that would be valuable were he ever to seek the Chief of Police job.

## II. Lillis's resignation and the process for picking a new Chief

In early 2012, Lillis announced his intention to retire, effective April 30. At a January 9, 2012 meeting with Lillis, the Police Commission[2] considered how the next Chief should be selected. The Commissioners first asked Lillis how many City officers were qualified for the position, and he responded that there were three – two Sergeants (Jesse Howe and Brandon Elias) and Hilde – but one was "not interested."[3] The Commission ultimately decided to post the position internally but also to advertise for external candidates.

---

[2] At all relevant times, the Commission comprised three Eveleth residents – Mary Debevec, Gary Skerjance, and Chairman John England – appointed by the Mayor.

[3] Lillis testified in his deposition that he identified Hilde as the uninterested officer, while Skerjance testified that Lillis did *not* provide a name. For his part, Hilde denies telling anyone he was uninterested in the position at the time.

In addition, the Commission determined, with input from Lillis, the process it would utilize to select the next Chief. Each applicant would be scored in two phases, an interview (worth up to 100 points) and an experience/training rating (no set number of points), and then ranked based upon the overall score. The interview rating had two components. A candidate could obtain up to five points in four categories – overall appearance, greeting to the interview panel, overall presence, and closure of the interview – for a total of 20 possible points. The remaining 80 points were to be awarded based on the candidate's answers to eight questions (up to 10 points each) selected by Lillis and approved by the Commission.

The experience/training rating also had two components: (1) experience and (2) training and employment history. For experience, candidates were awarded one point for each year of service as a police officer; one point for each year of service as a Sergeant (or equivalent); and two points for each year of service as a Lieutenant (or equivalent). For training and employment history, candidates were awarded between 0 and 20 points, but no criteria were selected to determine the appropriate score in this category.

This overall procedure – a subjective interview score combined with objective scores for experience, training, and employment history – was not unique. According to Lillis, the same basic process had been used for every hiring and promotion decision during his tenure as Chief of Police.[4] And other than on rare occasions in which the top-ranked candidate was later disqualified (for example, because of problems with his

---

[4] At oral argument, the City's counsel confirmed the process was "fairly standard."

background investigation) or dropped out of contention, the highest-rated candidate always was recommended for hiring or promotion to the City Council.

**III. The interviews**

Five persons applied for the Chief of Police position and four were interviewed by the Commission: (1) Hilde, (2) Howe, (3) Elias, and (4) Tim Koivunen, a detective with the Virginia, Minnesota, police department. Because of the purely objective manner in which points were awarded for years of service at various ranks, Hilde held a significant advantage before the interviews began, as no other applicant had advanced to the rank of Lieutenant. He received 65 "experience" points (29 points for 29 years as a police officer, plus 8 points for 8 years as a Sergeant, plus 28 points for 14 years as a Lieutenant), far surpassing Koivunen, the next nearest candidate (with 28 "experience" points).

The training and employment scores, however, closed this gap somewhat: Koivunen received 15 points in this category, Howe received 11, and Elias and Hilde each received 9. When asked in their depositions how they had calculated these scores, the Commissioners testified that *Lillis* had determined them. But Lillis testified to the contrary, asserting these numbers *came from the Commission* and he had no idea what criteria they had used to calculate them. Nor did certain of the training/employment scores make sense to Lillis. He noted, for example, that Howe had been a police officer for only eight years, four of which were at the Sergeant level, and at all times had been supervised by Hilde. Hence, he could not explain why Hilde's training/employment score was *lower* than Howe's.

Regardless, even with the training/employment scores factored in, Hilde still held a substantial lead before the oral interviews on February 15, 2012. Lillis was present at the interviews and read the Commission's questions to each candidate; Hilde went first, followed by Koivunen, Howe, and Elias. The Commissioners independently scored each interview, completing a score sheet that Lillis had prepared.

Howe received scores of 54, 72, and 82 from the Commissioners. Elias performed better, receiving marks of 93, 91, and 88. But Koivunen, according to England, "aced the interview," receiving a perfect score of 100 from all three Commissioners. In his deposition, Lillis could not recall another occasion in which a candidate had received perfect scores from every judge in connection with any police hiring or promotion decision during his tenure as Chief of Police.

That left only Hilde. As noted above, he had gone first, and the judges had individually scored his interview. Although those scores are not in the record, by the time all four interviews had been completed, the Commissioners concluded that only Hilde and Koivunen were truly in the running, given Hilde's high experience scores and Koivunen's perfect marks on the interview. The Commissioners then decided to "level" Hilde's score in order to reach a joint, consensus number for his interview. They excused Lillis from the meeting,[5] changed the interview scores they had previously awarded Hilde, and agreed on a final score of 69.

---

[5] Immediately prior to being excused, Lillis told the Commission he believed Hilde should be promoted to Chief of Police and he "hope[d] that the[ir] decision . . . would be accurately reflected in the scores."

- 6 -

As a result of the re-scoring, Hilde and Koivunen ended up tied with 143 points. This was also a first; the Commission had never before encountered a tie. The Commissioners then discussed which candidate should be recommended, as they believed they could send only one name to the City Council. Ultimately, it recommended Koivunen to be the next Chief because, in England's words, he was the "obviously superior candidate." The City Council accepted that recommendation and appointed Koivunen Chief of Police.

## IV. England meets with Hilde, Howe, and Elias, and litigation ensues

Following the selection decision, England agreed to meet with Hilde, Howe, and Elias at the police department, "out of respect for the officers," to attempt to explain the Commission's reasoning. The meeting, according to England, "went pretty fast and furious" – the officers were "obviously upset" and he attempted to "mollify" them. According to Hilde, England acknowledged at the meeting that his (Hilde's) eligibility for retirement "might have" been a factor in the Commission's decision.[6]

In April 2012, Hilde filed a charge of age discrimination with the Minnesota Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission. After receiving a right-to-sue letter, he commenced the instant action, alleging that he had been passed over for Chief of Police on account of his age in violation of the ADEA (Count I) and the MHRA (Count II). With discovery complete,

---

[6] Under the collective bargaining agreement between Hilde's union and the City, police officers are eligible to retire with benefits upon reaching 50 years of age; no other criterion (such as length of tenure) provides an officer retirement eligibility. According to England, all three Commissioners were aware that Hilde was eligible to retire.

the City now moves for summary judgment. The Motion has been fully briefed, the Court heard oral argument on November 13, 2013, and the Motion is now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*);[7] Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Beard v. Banks, 548 U.S. 521, 529-30 (2006); Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

---

[7] Several Eighth Circuit cases cited herein have a "red flag" on Westlaw as a result of Torgerson, which abrogated a litany of decisions suggesting summary judgment should be sparingly granted in discrimination cases. Because this Court has cited these cases for different legal principles that remain good law, it has not indicated such abrogation.

# ANALYSIS

## I. Age-discrimination law generally

Both the ADEA and the MHRA render it unlawful for an employer to discriminate in hiring or promotion decisions because of a candidate's age. 29 U.S.C. § 623(a)(1)-(2); Minn. Stat. § 363A.08, subd. 2(c); Ace Elec. Contractors, Inc. v. IBEW, Local Union No. 292, 414 F.3d 896, 900 (8th Cir. 2005) ("The MHRA, like the ADEA, broadly prohibits discrimination in employment decisions on the basis of age.") (internal quotation marks omitted). Claims under the two statutes are analyzed in the same fashion. E.g., Chambers v. Travelers Co., 668 F.3d 559, 566 (8th Cir. 2012).

When confronted with a summary-judgment motion in an age-discrimination case, a plaintiff may defeat the motion either with "direct evidence" of discrimination or by creating an inference of discrimination under the familiar framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Johnson v. Securitas Sec. Servs. USA, Inc., 728 F.3d 754, 759 (8th Cir. 2013). Here, Hilde relies upon McDonnell Douglas to oppose the City's Motion. (Mem. in Opp'n at 13-14.) In order to survive the Motion, therefore, he must first establish a prima facie case of discrimination. E.g., Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). If he does so, "the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant offers such a reason, the burden shifts back to the plaintiff to put forth evidence showing the defendant's proffered explanation is a pretext

for unlawful discrimination."  Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 914 (8th Cir. 2007) (citations omitted).[8]

## II.  Hilde cannot establish a prima facie case

A prima facie case of age discrimination has four elements.  The parties agree that the first three elements, in the failure-to-hire (or promote) context, are that the plaintiff was (1) over 40 at the time of the challenged decision, (2) not hired (or promoted), and (3) qualified for the job.  (Compare Def. Mem. at 15 with Mem. in Opp'n at 13.)  See also Tusing v. Des Moines Indep. Comm'y Sch. Dist., 639 F.3d 507, 515 (8th Cir. 2011). And they further agree that Hilde has satisfied these three elements here.

The fourth and final element, however, is more problematic.  Hilde points out that Koivunen was younger than him and argues *this fact alone* satisfies the final element of the prima facie case.  (Mem. in Opp'n at 13-14.)  Some support for this argument can be found in Eighth Circuit case law.  See, e.g., Tusing, 639 F.3d at 515 (fourth element of prima facie case satisfied with evidence "that the employer hired a younger person to fill the position"); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1079 n.3 (8th Cir. 2008) (same).  And hiring a younger worker may well suggest, *in appropriate circumstances*, that age was a factor in the employer's decision.  But context is

---

[8] That said, Hilde argues the Court need not consider the prima facie case, correctly noting that where, as here, a defendant has proffered a legitimate, nondiscriminatory reason for its actions, a court may skip the prima facie case and proceed directly to the issue of pretext.  (See Mem. in Opp'n at 14 (quoting *inter alia* Steward v. Ind. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007) ("[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext.")).)  But the decision whether to skip the prima facie case is discretionary, see Steward, 481 F.3d at 1043, and here the Court chooses to address it because the absence of a prima facie case is closely related to the absence of pretext.

- 10 -

everything, and in the Court's view, often it will *not* suffice for a plaintiff simply to point to the chosen candidate and exclaim, "He's younger!"

Establishing a prima facie case creates a rebuttable presumption that the employer discriminated against the plaintiff. E.g., Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011). Therefore, to create a prima facie case a plaintiff must proffer evidence "adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." Ward v. Int'l Paper Co., 509 F.3d 457, 461 (8th Cir. 2007). It is for this reason that simply pointing out the chosen candidate was younger than the plaintiff will not always suffice. A 50-year-old can call attention to the fact that a 49-1/2-year-old was selected over him, but that would do little (if anything) to create an inference the employer's decision was based upon his age. See, e.g., Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1413 (8th Cir. 1997) (plaintiff passed over for several jobs failed to satisfy fourth element of prima facie case because, of those positions, "the largest age disparity between [him] and the individual hired for the job was five years"). To put it simply, discrimination "cannot be [shown] from the replacement of one worker with another worker *insignificantly younger*." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (emphasis added).

It is perhaps for this reason that other Eighth Circuit cases formulate the final element of the prima facie case differently. Instead of permitting a plaintiff to proffer evidence he was passed over for a job in favor of someone *younger*, these cases require evidence showing that the selected candidate was *substantially* or *significantly* younger. See, e.g., Holmes v. Trinity Health, 729 F.3d 817, 822 (8th Cir. 2013) (substantially

younger); Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1153 (8th Cir. 2007) (sufficiently younger). This makes eminent sense. More than evidence simply showing *some* age difference, no matter how small, evidence of a *substantial* age difference reasonably allows the conclusion that the plaintiff's age factored into the employer's decision. See O'Connor, 517 U.S. at 313 ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination.").[9]

This dooms Hilde's prima facie case. It is undisputed that at the time of the Commission's decision, Hilde was 51 and Koivunen was 43. But in the Eighth Circuit, an eight-year age gap appears too small to meet the "substantially younger" threshold. See, e.g., Chambers v. Travelers Co., 668 F.3d 559, 566 (8th Cir. 2012). In Chambers, the plaintiff was fired when she was 52 years old; her job duties were reassigned to individuals aged 51 and 44. The plaintiff alleged age discrimination but the district court dismissed her claim at summary judgment, in the process "assum[ing] without deciding that [she] was replaced by a 'sufficiently younger' employee to raise an inference of age discrimination" for purposes of the prima facie case. Id. at 566. The Eighth Circuit, however, "conclude[d] this cautious assumption was unwarranted" and held that the plaintiff had "failed to show that either of her replacements was 'sufficiently younger.'" Id. at 566. That same logic must apply here. And in the absence of any other argument, Hilde has failed to establish a prima facie case of age discrimination.

---

[9] Still other cases formulate the final factor differently, requiring "additional evidence that age was a factor in the employer's . . . decision." Rahlf v. Mo-Tech Corp., 642 F.3d 633, 637 (8th Cir. 2011). Here, however, Hilde only points to age differential to establish his prima facie case.

**III.     No evidence of pretext**

In any event, assuming *arguendo* that Hilde has established a prima facie case, his claims would still fail because he has not proffered sufficient evidence to create a jury question whether the City's proffered reason for its decision – Koivunen was the better candidate – is a pretext for age discrimination.

To be sure, the record contains some procedural irregularities in the selection process. First, the City "leveled" Hilde's interview score by jointly agreeing to a lower total for his performance. This was not contemplated by the procedures the Commission had adopted for selecting a Chief of Police, nor used to alter the score of any other candidate. Nor could the Commissioners explain Hilde's training/employment score or why other candidates (save for Elias) had received higher marks. When asked who had calculated those scores, the Commissioners identified Lillis, but Lillis identified the Commissioners. In addition, the fact that Koivunen received a perfect interview score from the Commission raises some concern.

These circumstances, viewed collectively, might well lead a jury to conclude the City was attempting to stack the deck against Hilde and in favor of Koivunen. But this is not sufficient to survive the City's Motion, because the record is devoid of evidence that the City's conduct was *motivated by Hilde's age.*

When an employer has articulated a legitimate, nondiscriminatory reason for its conduct, "the factual inquiry proceeds to a new level of specificity." Rahlf v. Mo-Tech Corp., 642 F.3d 633, 638 (8th Cir. 2011) (internal quotation marks and citations omitted). To avoid summary judgment, the plaintiff must present evidence that not only "creates a

question of material fact as to whether [the defendant's] proffered reason is pretextual" but that *also* "creates a reasonable inference that *age was a determinative factor in [the] decision*." Id. (emphasis added); accord, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original); Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1137 (8th Cir. 2006).[10]

The record here is extremely meager with regard to age. Indeed, the *only* evidence cited by Hilde to suggest age-based animus is the Commission's awareness he was eligible to retire, which "might" have played a role (according to England) in its decision to select Koivunen. Yet, it is not improper for an employer to consider a candidate's eligibility for retirement when making a hiring decision. See, e.g., Cooney v. Union Pac. R.R. Co., 258 F.3d 731, 735 (8th Cir. 2001) ("[E]mployment decisions motivated by factors other than age (such as salary, seniority, or *retirement eligibility*), even when such factors correlate with age, do not constitute age discrimination.") (emphasis added); EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 952 (8th Cir. 1999) (affirming summary judgment for employer on age-discrimination claim despite evidence decisionmakers took into account retirement eligibility when making challenged decision). Indeed, in a position as important as Chief of Police, it would make sense for the Commission to ensure that its selected candidate would remain for some time.

---

[10] A "strong" prime facie case, combined with evidence tending to disprove the employer's proffered reason, may create a jury question on discrimination. See, e.g., Torgerson, 643 F.3d at 1046. Here, however, Hilde has not established a prima facie case, let alone a "strong" one.

Hence, even assuming the Commission *did* consider Hilde's retirement eligibility, this does not show its decision was motivated by his age. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993) ("[A]n employee's age is analytically distinct from his years of service."). [11]

Hilde points to nothing more to suggest Koivunen was selected because he was younger. The record, therefore, is simply insufficient to create a genuine issue that "age was a determinative factor in [the City's] decision." Rahlf, 642 F.3d at 638.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the City's Motion for Summary Judgment (Doc. No. 20) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: December 4, 2013              s/Richard H. Kyle
                                    RICHARD H. KYLE
                                    United States District Judge

---

[11] Only when an employer uses an otherwise facially neutral factor as a proxy for age does the employer stray into the realm of discrimination. See, e.g., Slathar v. Sather Trucking Corp., 78 F.3d 415, 418-19 (8th Cir. 1996) ("Age discrimination may exist when an employer terminates an employee based on a factor such as experience or salary when the employer . . . uses that factor as a proxy for age."); Kahler v. Peters, Civ. No. 05-1107, 2007 WL 551612, at *6 & n.20 (D. Minn. Feb. 21, 2007) (Kyle, J.). But here there is no evidence the Commission viewed retirement status as a proxy for age. Indeed, despite Hilde repeatedly noting in his brief that retirement eligibility was triggered by a police officer reaching 50 years old (and not for any other reason), he points to *no* evidence suggesting the Commissioners *were aware of this fact*. In other words, while the Commissioners may have known he was retirement-eligible, nothing in the record indicates they knew *why* that was the case. Had the Commission been using retirement eligibility as a proxy for age, the Court would have expected Hilde to argue that its consideration of this fact was "direct evidence" of age discrimination. The absence of that argument implicitly suggests Hilde believes to the contrary.